UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

───────────────────────────────────────────

DEBORAH MAGGIORE,

                              Plaintiff,

                    -vs-                                    14-CV-879-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                              Defendant.

───────────────────────────────────────────

APPEARANCES:    MELISSA PEZZINO, ESQ., Williamsville, New York, for Plaintiff

                WILLIAM J. HOCHUL, JR., United States Attorney (SIXTINA
                FERNANDEZ, Special Assistant United States Attorney, of Counsel),
                Buffalo, New York, for Defendant.

        This matter has been transferred to the undersigned for all further proceedings, by

order of Chief United States District Judge William M. Skretny dated October 8, 2015 (Item

11).

        Plaintiff Deborah Maggiore initiated this action on October 21, 2014, pursuant to the

Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final

determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's

application for Social Security Disability Insurance ("SSDI") and Supplemental Security

Income ("SSI") benefits under Title II and Title XVI of the Act, respectively.  Both parties

have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of

Civil Procedure (*see* Items 8, 10).  For the following reasons, plaintiff's motion is denied,

and the Commissioner's motion is granted.

## BACKGROUND

Plaintiff was born on July 29, 1969 (Tr. 175).[1] She completed the 12th grade, and has prior work experience as a customer service insurance worker, collection clerk, and telephone solicitor (Tr. 204).

Plaintiff filed an application for SSDI benefits in November 2010 (Tr. 175-76), and for SSI benefits in December 2010 (Tr. 177-82), alleging disability due to depression, with an onset date of July 1, 2010 (Tr. 203). The applications were denied administratively on March 28, 2011 (Tr. 127-34). Plaintiff requested a hearing, which was held on September 19, 2012, before ALJ William M. Weir (Tr. 104-26). Plaintiff appeared and testified at the hearing, and was represented by counsel. Ms. Boranza, a vocational expert, also provided testimony.

On June 27, 2013, the ALJ issued a decision finding that plaintiff was not disabled under the Act (Tr. 84-99). Following the sequential evaluation process outlined in the Social Security Administration regulations governing claims for benefits under Titles II and XVI (*see* 20 C.F.R. §§ 404.1520, 416.920), the ALJ found at step one that plaintiff had not engaged in substantial gainful activity since the alleged onset date, and at steps two and three, that plaintiff's "severe" impairments (identified as a panic disorder, post-traumatic stress disorder, and major depressive disorder, considered alone or in combination, did not meet or equal the severity of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"), specifically considering the criteria of Listings 12.04 (*Affective Disorders*) and 12.06 (*Anxiety Related Disorders*) (Tr. 90-92). The ALJ then discussed the

---

[1] Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner at the time of entry of notice of appearance in this action (Item 6).

evidence in the record regarding the functional limitations caused by plaintiff's impairments, including plaintiff's testimony about her symptoms; the objective medical evidence; and reports and opinions from treating and consultative medical sources (*see* Tr. 92-97). Based on this record, the ALJ determined that plaintiff had the residual functional capacity ("RFC") to perform a full range of work at all exertional levels, provided the work involves no more than occasional contact with co-workers, supervisors, or the public; following and understanding simple and complex directions and instructions; maintaining attention, concentration, and a regular work schedule; and making appropriate work-place decisions (Tr. 92).

With regard to the medical source opinion evidence, the ALJ gave "great weight" to the opinion of Gregory A. Fabiano, Ph.D., who conducted a consultative psychiatric evaluation of plaintiff on March 15, 1011 (Tr. 311-15), and reported results consistent with psychiatric problems, but not "significant enough to interfere with [plaintiff]'s ability to function on a daily basis" (Tr. 314).  The ALJ also gave great weight to the opinion of state agency review psychiatrist Daniel S. Mangold, who completed a Psychiatric Review Technique ("PRT") Form and a Mental Residual Functional Capacity Assessment ("MRFC") Form on March 24, 2011 (Tr. 316-29, 330-33), and concluded that plaintiff "appears to be mentally capable of performing simple competitive work in a low contact work setting" (Tr. 328).  The ALJ also considered, but rejected, the medical statement form dated August 27, 2012, submitted by Dr. Ramon Tan, plaintiff's treating psychiatrist at Horizon Health Services (Tr. 367-78), which indicated that plaintiff was "markedly" or "extremely" impaired in several areas of work-related functioning due to her psychiatric condition (*see* Tr. 96).

Relying on the VE's testimony, the ALJ found at step four of the sequential evaluation process that although plaintiff could not perform her past relevant work as a customer service insurance worker, collection clerk, or telephone solicitor, there were other jobs that exist in significant numbers in the national economy that plaintiff could perform, considering her age, education, work experience and RFC (Tr. 97-99).  Accordingly, at step five, the ALJ found that plaintiff was not disabled within the meaning of the Act, and not entitled to SSDI or SSI benefits (Tr. 99).  This decision became the final determination of the Commissioner on September 2, 2014, when the Appeals Council denied plaintiff's request for review (Tr. 1-4), and this action followed.   In her motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed because the ALJ failed to properly assess plaintiff's RFC, and failed to properly evaluate the treating psychiatrist's opinion regarding plaintiff's work-related functional limitations. *See* Item 8-1.  The government contends that the Commissioner's determination should be affirmed because the ALJ fully complied with the Appeals Council's order, and the determination was otherwise made in accordance with the pertinent legal standards and based on substantial evidence.  *See* Item 10-1.

## DISCUSSION

### I.    Scope of Judicial Review

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive …."  42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as

adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).  The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts.  *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner.  *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012).  The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. Mar. 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773).  "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted).  Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or

misapplication of the regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at \*6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision.  42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied ... the court shall review only the question of conformity with [the] regulations…."); *see Kohler*, 546 F.3d at 265.  "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002).  Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will not be disturbed so long as substantial evidence also supports it.  *See Marquez v. Colvin*, 2013 WL 5568718, at \*7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013).  "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the

court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying. *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II.     Standards for Determining Eligibility for Disability Benefits

To be eligible for SSDI or SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …." 42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. §§ 404.1505(a), 416.905(a).  As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for evaluation of the claimant's eligibility for benefits.  *See* 20 C.F.R.§§ 404.1520, 416.920.  First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.  If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is an impairment or combination of impairments that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities …." 20 C.F.R. §§ 404.1520(c),  416.920(c); *see also* §§ 404.1509, 416.909 (duration requirement).  If the claimant's impairment is severe and of qualifying duration, the ALJ then determines whether it meets or equals the criteria of an impairment found in

the Listings.  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work.  If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled, and the sequential evaluation process comes to an end.  Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8, 2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant meets this burden, the burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform.  *Lynch*, 2008 WL 3413899, at *3 (citing *Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999)).  "In the ordinary case, the Commissioner meets h[er] burden at the fifth step by resorting to the applicable medical vocational guidelines (the grids), … [which] take into account the claimant's residual functional capacity in conjunction with the claimant's age, education, and work experience."  *Rosa*, 168 F.3d at 78 (internal quotation marks, alterations and citations omitted).  If, however, a claimant has non-exertional limitations (which are not accounted for in the grids) that "significantly limit the range of work permitted by his exertional limitations then the grids obviously will not accurately determine disability status …."  *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986) (internal quotation marks and

citation omitted).  In such cases, "the Commissioner must 'introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the national economy which claimant can obtain and perform.' "  *Rosa*, 168 F.3d at 78 (quoting *Bapp*, 802 F.2d at 603).

## III.    Plaintiff's Motion

Plaintiff's primary contention in support of her request for reversal of the Commissioner's final determination is that the ALJ committed legal error because his RFC assessment is based on a selective adoption of only those portions of the reports and opinions of consultative and reviewing medical sources that supported the ALJ's findings, while disregarding substantial evidence – including the treating psychiatrist's findings and opinions – favorable to plaintiff's application for benefits.  According to plaintiff, had the ALJ properly considered the entire record, the ALJ would have found that plaintiff's marked and/or extreme functional limitations related to her mental impairments prevent her from performing the assessed full range of work at all exertional levels, with no more than occasional contact with others.

An individual's RFC is his or her "maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis."  *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir. 1999) (quoting Social Security Ruling ("SSR") 96–8p, 1996 WL 374184, at *2 (July 2, 1996)).  In making an RFC assessment, the ALJ should consider "a claimant's physical abilities, mental abilities, symptomology, including pain and other limitations which could interfere with work activities on a regular and continuing basis."  *Pardee v. Astrue*, 631 F. Supp. 2d 200, 221 (N.D.N.Y. 2009) (citing 20 C.F.R. § 404.1545(a)).  "To determine RFC, the ALJ must consider all the relevant evidence,

including medical opinions and facts, physical and mental abilities, non-severe impairments, and [p]laintiff's subjective evidence of symptoms." *Stanton v. Astrue*, 2009 WL 1940539, *9 (N.D.N.Y. July 6, 2009) (citing 20 C.F.R. §§ 404.1545(b)-(e)), *aff'd*, 370 F. App'x 231 (2d Cir. 2010); *see also O'Neil v. Colvin*, 2014 WL 5500662, at *5 (W.D.N.Y. Oct. 30, 2014).

The Second Circuit has repeatedly cautioned that, in making the RFC determination, " 'the ALJ cannot arbitrarily substitute his own judgment for a competent medical opinion …. [W]hile an [ALJ] is free to resolve issues of credibility as to lay testimony or to choose between properly submitted medical opinions, he is not free to set his own expertise against that of a physician who [submitted an opinion to or] testified before him.' " *Balsamo v. Chater*, 142 F.3d 75, 81 (2d Cir. 1998) (quoting *McBrayer v. Secretary of Health and Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983); *see also Rosa*, 168 F.3d at 79. Thus, while the ALJ is not obligated to "reconcile explicitly every conflicting shred of medical testimony, … he cannot simply selectively choose evidence in the record that supports his conclusions." *Moss v. Colvin*, 2014 WL 4631884, at *32 (S.D.N.Y. Sept. 16, 2014) (citing *Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983); *Miles v. Harris*, 645 F.2d 122, 123 (2d Cir. 1981); *Andino v. Bowen*, 665 F. Supp. 186, 190 (S.D.N.Y. 1987)).

In addition, in evaluating the medical opinion evidence, whether obtained from treating or consultative sources, the ALJ should consider the following factors: (1) the frequency of examination and length, nature, and extent of the treatment relationship; (2) the evidence in support of the physician's opinion; (3) the consistency of the opinion with the record as a whole; (4) whether the opinion is from a specialist; and (5) whatever other

factors tend to support or contradict the opinion. *Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010); *see* 20 C.F.R. § 404.1527(c); *Speilberg v. Barnhart*, 367 F. Supp. 2d 276, 281 (E.D.N.Y. 2005) ("These factors are also to be considered with regard to non-treating sources, state agency consultants, and medical experts"). The Social Security regulations also recognize a " 'treating physician' rule of deference to the views of the physician who has engaged in the primary treatment of the claimant." *Green–Younger v. Barnhart*, 335 F.3d 99, 106 (2d Cir. 2003); *see also Cichocki*, 534 F. App'x at 74. Indeed, the regulations provide that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s)" will be given "controlling weight" if the opinion is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2); *see also Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008) (noting that it is the Commissioner's role to resolve "genuine conflicts in the medical evidence," and that a treating physician's opinion is generally "not afforded controlling weight where the treating physician issued opinions that are not consistent with the opinions of other medical experts").

When the ALJ does not accord controlling weight to the medical opinion of a treating physician, the regulations require that the ALJ's written determination must reflect his consideration of the § 404.1527(c) factors, and must then "comprehensively set forth his reasons for the weight assigned to a treating physician's opinion." *Burgess*, 537 F.3d at 129 (internal alteration and citation omitted). The notice of determination must "always give good reasons" for the weight given to a treating source's opinion. 20 C.F.R.

§ 404.1527(c)(2); *see Schaal v. Apfel*, 134 F.3d 496, 503–04 (2d Cir. 1998) (stating that the Commissioner must provide a claimant with "good reasons" for the lack of weight attributed to a treating physician's opinion); *Halloran v. Barnhart*, 362 F.3d 28, 32–33 (2d Cir. 2004) ("This requirement greatly assists our review of the Commissioner's decision and 'let[s] claimants understand the disposition of their cases.' ") (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)).

In this case, the court is persuaded upon review of the record as a whole that the ALJ's RFC assessment reflects substantial compliance with these requirements.  The ALJ provided a thorough discussion of the medical evidence, including Dr. Tan's treatment notes from plaintiff's regular office visits during the relevant period which consistently reported that plaintiff suffered only "mild to moderate" symptoms of anxiety and depression (Tr. 93-96; *see* Tr. 343-63).  As indicated above, the ALJ relied heavily on the report and opinion of Dr. Fabiano, the consultative examining physician, who found plaintiff capable of following and understanding simple instructions; performing simple tasks independently; maintaining attention and concentration; maintaining a regular schedule; learning new tasks; performing complex tasks independently; making appropriate decisions; relating adequately with others; and appropriately dealing with stress (*see* Tr. 314).  The ALJ also placed strong reliance on the findings and opinion of Dr. Mangold, rendered upon review of the medical evidence (including Dr. Fabiano's assessment), indicating that plaintiff was mentally capable of performing simple, routine work-related tasks in a low contact setting (*see* Tr. 328).  According to the ALJ, Dr. Fabiano is a "well-qualified license[d] psychologist" who provided a thorough and impartial evaluation of plaintiff's upon examination and

review of the medical evidence of record, and Dr. Mangold (on is "an unbiased state agency mental health professional, who is a psychiatrist[,] … credentials [that] warrant great weight given their expertise in mental health" (Tr. 96).

The ALJ also adequately explained his reasons for rejecting Dr. Tan's "pre-printed mental assessments" (Tr. 96) set forth on the medical source statement form dated August 27, 2012.[2]  As the ALJ pointed out in his written determination, the restrictive limitations indicated by Dr. Tan on the form are inconsistent not only with the findings of the consultative and reviewing physicians, but also with Dr. Tan's own findings throughout the course of his treatment of plaintiff.  This is confirmed by the court's review of Dr. Tan's treatment notes which report that on virtually every follow-up visit To Horizon Health during the relevant period, plaintiff was alert; her symptoms of depression and anxiety were "mild to moderate;" there were no delusions or hallucinations; she exhibited no signs of self-destructive or aggressive behavior; there were no gross cognitive deficits; and she did not appear to be at risk to herself or others (*see*, *e.g.*, Tr. 343, 344, 346, 350, 353, 357, 358, 359, 362, 363).  In this court's view, the ALJ's discussion of his consideration of the objective medical evidence (or lack thereof) to support the limitations indicated by Dr. Tan on the pre-printed medical source statement form, and his explanation of the inconsistency of these limitations with the well-supported findings of the examining and reviewing consultative physicians, demonstrates application of "the substance of the treating

---

[2]The same completed form (full title: "Medical statement concerning depression with anxiety, OCD, PTSD, or panic disorder for Social Security disability claim"), dated August 27, 2012, was resubmitted to the record on September 26, 2012 (*see* Tr. 370-73), and again on October 10, 2012 (*see* Tr. 374-78), as "additional information concerning the time period to which [Dr. Mangold's findings] applied" (Tr. 374).

physician rule" in a manner that allows the claimant, and the reviewing courts, to understand the disposition of the claim.  *Halloran*, 362 F.3d at 32, 33.

Accordingly, upon careful consideration of the entire record and the ALJ's opinion, the court concludes that the ALJ's RFC assessment in this case was made upon proper application of appropriate legal standards, and is supported by substantial evidence. Therefore, the Commissioner's final determination must be upheld.

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Item 8) is denied, and the Commissioner's motion for judgment on the pleadings (Item 10) is granted.  The Clerk of the Court is directed to enter judgment in favor of the Commissioner, and to close the case.

So ordered.

                                        \s\ John T. Curtin
                                        JOHN T. CURTIN
                                        United States District Judge

Dated: February 3, 2016